MAHER WAAD, an individual,
MARKS ONE CAR RENTAL, a
Michigan corporation, MARKS ONE
COLLISION, a Michigan corporation,

      Plaintiffs,

vs.                                                                    Case No. 16-13362

SERGEANT DAN WILLIS, in his individual capacity,          HON. AVERN COHN
DETECTIVE DAVE KRISS, in his individual and
official capacity, LIEUTENANT MARK OERMAN,
THE COUNTY OF MACOMB, a municipality,
jointly and severally,

      Defendants.

_____/

### MEMORANDUM AND ORDER GRANTING
### MACOMB COUNTY'S MOTION FOR SUMMARY JUDGMENT (Doc. 55)
### AND
### MACOMB COUNTY LIEUTENANT MARK OERMAN AND MACOMB COUNTY
### SERGEANT DAN WILLIS' MOTION FOR SUMMARY JUDGMENT (Doc. 56)
### AND
### DETECTIVE KRISS' MOTION FOR SUMMARY JUDGMENT (Doc. 72)
### AND
### DENYING DETECTIVE KRISS' RENEWED MOTION FOR SANCTIONS (Doc. 75)
### AND
### DISMISSING CASE

## TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | Introduction | 1 |
| II. | General Background - The Three Cases | 2 |
| | A. The 2013 Case | 2 |
| | B. This Case | 3 |
| | C. The 2017 Case | 3 |
| III. | Background of This Case | 3 |
| | A. The Investigation | 3 |
| | B. The Search Warrants | 6 |
| | C. Waad's Arrest and Prosecution | 8 |
| IV. | Summary Judgment | 9 |
| V. | Macomb County's Motion for Summary Judgment | 10 |
| | A. Counts I and II | 10 |
| | B. Count III | 10 |
| |     1. Legal Standard | 11 |
| |     2. Discussion | 13 |
| |     3. Conclusion | 15 |
| VI. | Oerman and Willis' Motion for Summary Judgment | 16 |
| | A. Initial Comment | 16 |
| | B. Legal Standards/Discussion | 17 |
| |     1. Unlawful Search and Seizure | 17 |
| |     2. Unlawful Arrest | 19 |
| |     3. Malicious Prosecution | 20 |
| |     4. Qualified Immunity | 21 |
| | C. Plaintiffs' Evidence | 23 |
| | D. Collective Liability | 25 |
| | E. Conclusion | 25 |
| VII. | Kriss' Official Capacity Claim/Sanctions Motion | 26 |
| VIII. | Kriss' Motion for Summary Judgment | 28 |
| | A. Collateral Estoppel | 28 |
| | B. Legal Standards/Discussion | 29 |
| |     1. Unlawful Search and Seizure/Unlawful Arrest | 29 |
| |     2. Malicious Prosecution | 32 |
| | C. Plaintiff's Arguments | 34 |
| IX. | Conclusion | 35 |

## I. Introduction

This is a civil rights case. As will be explained, this is one of three cases filed by plaintiffs. This case, filed in 2016, is the only case remaining. Broadly stated, plaintiffs claim that defendants have historically had a vendetta against Maher Waad (Waad) and his companies which led to a 2014 raid on Waad's companies and resulted in criminal charges against him that were later dismissed. In this case, Waad and the two companies owned by him, Marks One Car Rental and Marks One Collision, initially sued multiple individuals and entities, as follows: (1) Farmers Insurance Exchange (Farmers), (2) Allen Keller - an employee of Farmers, (3) Sergeant Dan Willis (Willis) - a Macomb County Sheriff, (4) Detective Dave Kriss (Kriss) - a Warren police officer, (5) Lieutenant Mark Oerman (Oerman) a Macomb County Deputy Sheriff, (6) Dana Goldberg - a Macomb County deputy prosecutor, (7) Macomb County, (8) Macomb County Sheriff's Department, and (9) Michigan Auto Theft Authority.

Following various stipulations and motion practice, <u>see</u> Docs. 32, 33, 34, 37 the remaining defendants are: (1) Willis, in his individual capacity, (2) Kriss, in his official and individual capacity, (3) Oerman, in his individual capacity, and (4) Macomb County. Upon the dismissal of plaintiffs' state law claims, <u>see</u> Doc. 27, the following claims are at issue:

> Count I - Violation of the Fourth and Fourteenth Amendments - False Arrest, False Imprisonment and Unreasonable Search and Seizure
>
> Count II - Violation of Fourth and Fourteenth Amendments - Malicious Prosecution
>
> Count III - 42 U.S.C. § 1983 claim - Monell

Before the Court are the following motions:

Macomb County's Motion for Summary Judgment (Doc. 55)

Oerman and Willis' Motion for Summary Judgment (Doc. 56)

Kriss' Motion for Summary Judgment (Doc. 72)

Kriss' Renewed Motion for Sanctions (Doc. 75)

For the reasons that follow, the motions for summary judgment will be granted and the motion for sanctions will be denied. This case will be dismissed.

## II. General Background - The Three Cases

Each of the three cases are discussed briefly below.

### A. The 2013 Case

In 2013, plaintiffs sued Farmers and several other insurance companies, raising claims under state and federal law which essentially boiled down to the claim that defendants were not treating Waad and his businesses fairly in part because the insurance companies suggested to plaintiffs' customers that plaintiffs engaged in fraud. Waad, et al v. Farmers, et al, 13-14610 (the 2013 Case). During the pendency of the 2013 Case, Waad and his businesses were raided and Waad was charged criminally.

Following stipulations and motion practice, only Farmers remained as a defendant with claims of defamation and tortious interference asserted against it. In March of 2018, the Court granted Farmers' motion to dismiss and dismissed the case. See Doc. 285 (Memorandum and Order) and 286 (Judgment) in the 2013 Case. Plaintiffs have appealed. See Doc. 288 in the 2013 Case. The case is pending on appeal and in the briefing stages.

### B.  This Case

Meanwhile, in 2016, while the 2013 Case was pending and after Waad's criminal case was dismissed, Waad and his companies filed this case (the 2016 Case or "this case")[1] against law enforcement officials and others.

### C.  The 2017 Case

Finally, in 2017, while the 2013 Case and this Case were pending, Waad and his companies filed a case against State Farm and Keller as well as another Farmer's employee, Tom Berry.  <u>Waad v. Farmers</u>, 17-13034 (the 2017 Case).[2]  Plaintiffs asserted state and federal claims–the same state and federal claims asserted against Farmers and Keller in the 2016 Case.  The Court granted Farmers and Keller's motion to dismiss.  <u>See</u> Doc. 19 (Memorandum and Order) and Doc. 20 (Judgment) in the 2017 Case.  Plaintiffs have appealed.  <u>See</u> Doc. 21 in the 2017 Case.  The appeal is pending and in the briefing stages.[3]

### III.  Background of This Case

### A.  The Investigation

From July 2013 to September 2014, Kriss was a employed by the Warren Police Department and assigned to the Macomb Auto Theft Squad (MATS).  Willis and

---

[1]The 2016 Case was reassigned the undersigned as a companion to the 2013 Case.  <u>See</u> Doc. 6 in the 2016 Case.

[2]The 2017 Case was reassigned to the undersigned as a companion to the 2013 Case.  <u>See</u> Doc. 8 in the 2017 Case.

[3]The Sixth Circuit denied plaintiffs' motion to consolidate the appeals in the 2013 Case and the 2016 Case but "will submit the appeals for consideration to the same panel on the same date" once the briefing is complete.  See Doc. 14-1 in <u>Waad v. Farmers</u>, No. 18-1588 (appeal of the 2016 Case).

Oerman were also part of MATS. An objective of MATS is to investigate complaints and tips of insurance fraud.[4] Tips often come from insurance companies and confidential informants.

During early September of 2013, Allen Keller (Keller), a fraud investigator employed by Farmers Insurance, contacted MATS to discuss his investigation of Waad's business practices.

Kriss, Willis and Oerman responded to the request by meeting with three (3) representatives from Farmers Insurance. At MATS's request, Macomb County Assistant Prosecutor Michael Macherzak (Macherzak) and National Insurance Crime Bureau investigator Larry Lafond also attended this meeting. Farmers' out-of-state expert investigator Scott Wood attended by phone.

Farmers identified several different theories of insurance fraud associated with Marks One, as follows:

a. Inflated Repair Billings;

b. Fictitious Repair Billings;

c. Fictitious Tow Billings;

d. False Extension of Repair Time to Increase Rental Charges;

e. Enhancing Damage Reports; and

f. False Reporting of Rental Vehicle Damage and Theft.

At the close of the meeting, Macherzak agreed that MATS would pursue an investigation of Marks One to the extent Wood's findings substantiated the allegations.

---

[4]For a good description of MATS, attached as Exhibit A is a communication from Anthony M. Wickersham, the Sheriff of Macomb County.

4

Soon after the meeting, Oerman left MATS and was reassigned to other duties.

Oerman had no further involvement in any matter concerning Waad or his businesses.

From October 2013 to January 2014, Wood, at Farmers' direction, conducted ten

(10) physical inspections of vehicles repaired by Marks One.  See Exhibit C -

Declaration of Wood; Doc. 10-2 and provided the following information to MATS in a

Special Investigations Unit Report (the "SIU Report"):

- Sherell Jones Vehicle: The estimate specifies to replace the driver's side front door's outer panel but the original damaged driver's side front door outer panel was still installed.

- Thomas Brown Vehicle: The estimate specifies to replace the radiator but the original damaged radiator support was still installed.
The estimate specifies to replace the front shield but the original damaged front shield was still installed.

- Sinan Marrogy Vehicle: The estimate specifies to replace the passenger's side rear door outer panel but the original damaged passenger's side rear door outer panel was still installed.

- Hattie Johnson Vehicle: The estimate specifies to replace AC condenser but the original damaged AC condenser was still installed.
The estimate specifies to replace the radiator support but the original damaged radiator support was still installed.

- Theresa Jones Vehicle: The estimate specifies to replace the passenger's side door shell but the original damaged passenger's side door shell was still installed.

- Tanaira Moore Vehicle: The estimate specifies to replace the driver's side panel but the original damaged driver's side panel was still installed.

- Melody Garvin Vehicle: The estimate specifies to replace the front bumper energy absorber but the original damaged front bumper energy absorber was still installed. The estimate specifies to replace the radiator support but the original damaged radiator support was still installed.

- Suma Baiju Vehicle: The estimate specifies to replace the hood but original damaged hood was still installed.

- Tifani Rae Vehicle: The estimate specifies to replace the front shield but the

original front shield was still installed.

On February 7, 2014, after being provided with the SIU Report, MATS opened an investigation of Marks One and Waad.

Both Kriss and Macherzak believed that the SIU Report was impartial, accurate, and provided probable cause to support the criminal charges later authorized by Macherzak. However, Macherzak asked MATS to independently confirm the specific customer complaints enumerated in the SIU Report and ensure there would be victim cooperation. During the investigation, between February 18-24, at least six (6) former Marks One customers agreed to pursue a complaint against Marks One. After being presented with this information, Macherzak directed that MATS take steps to bring charges against Waad. As such, on February 28, 2014, Kriss submitted a warrant request to the Macomb County Prosecutor's Office on charges of racketeering.

The scope of the Marks One investigation included a theory that "free" rental vehicles were provided to customers in the furtherance of the scheme to defraud insurance companies. Accordingly, Willis and Kriss met with Macomb County Assistant Prosecuting Attorney Dana Goldberg-Deasy ("Goldberg") regarding proper procedure for the seizure of assets, including rental cars, in the event search warrants were executed at Marks One.

## B. The Search Warrants

On April 21, 2014, Kriss executed Affidavits in Support of search warrants for the following locations:

• Marks One "at 2325 and 2375 8 Mile in the City of Warren";

• "Marks One Car Rental" at 21949 Dequindre in the City of Hazel Park;

• Maher Waad's residence at 4060 West Point in the Township of Shelby;

• State of Michigan Treasury

• The Marks One Bank of America Account where checks for the subject repairs were deposited; and

• Community Choice Credit Union.

Willis was not involved in the procurement of any of the search warrants. He did, however, participate in the execution of one (1) search warrant.

Macomb County District Court Magistrate Kim Silvestro found that probable cause existed and authorized search warrants for each location. The search warrants all permitted the seizure of business records, rental cars and other instrumentalities of the business of Marks One.

On April 23, 2014, a multi-jurisdictional team executed the search warrants almost simultaneously. Included in the team were at least two (2) FBI Agents; Kriss had been told these Agents wanted to participate but was not provided their reasoning.

Kriss viewed the Marks One locations (the Car Rental and Collision Repair Shop) on 8 Mile as a single entity given their location one building from another, their shared parking lot and the fact that the rentals were instrumentalities of the insurance fraud scheme.

During execution of the search warrant for 2325 8 Mile, a Marks One employee told officers that all Marks One business records were kept at 14500 8 Mile Road in Oak Park, Michigan.

When advised of this information, Kriss left the Marks One location to prepare a warrant request for 14500 8 Mile Road in Oak Park. Magistrate Silvestro determined

probable cause existed and authorized a search warrant for this Oak Park location.  The search warrant again permitted the seizure of business records, rental cars and other instrumentalities of the business of Marks One.  Kriss was not present for execution of the Search Warrant at the Oak Park location on 8 Mile.

Detailed logs were maintained regarding items seized at each location.  Of the items seized and logged, Kriss recalls contacting Macherzak and Goldberg while on scene regarding certain rental vehicles titled to a third-party and being directed to go ahead and effect the seizure of these vehicles.

### C.  Waad's Arrest and Prosecution

On April 28, 2014, Macherzak and District Court Judge Dean Ausilio authorized an arrest warrant and complaint for Waad on five (5) counts of False Pretenses $1,000 to $20,000 and two (2) counts of False Pretenses $200 to $1,000. Exhibit D, p. 171; Exhibit L – Criminal Complaint.

The next day, Waad surrendered at the Macomb County Sheriff's Office and was served with Notice of Seizure and Intent to Forfeit regarding the property seized searches.  He was arraigned before Judge Ausilio that day and released on a personal bond.

Macherzak subsequently authorized an additional charge of racketeering against Waad.  Macherzak testified at deposition that he waited to authorize this charge because its inclusion would limit his discretion to negotiate a plea.

On July 17, July 29, August 5 and August 6, 2014, Waad's preliminary examination was held.  On December 5, 2014, Judge Ausilio bound the case against Waad over to the Macomb County Circuit Court on all the criminal charges.

At hearing on March 9, 2015, Macomb County Circuit Court Judge James Maceroni granted Waad's Motion to Quash and Dismiss. On May 31, 2016, the Michigan Court of Appeals affirmed the dismissal.

## IV. Summary Judgment

Summary judgment is appropriate when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). In so doing, the Court "must view the evidence in the light most favorable to the non-moving party." Employers Ins. of Wausau v. Petroleum Specialties, Inc., 69 F.3d 98, 101 (6th Cir. 1995).

Rule 56 provides that:

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support a fact.

Fed. R. Civ. P. 56(c)(1).

V.  Macomb County's Motion for Summary Judgment

A.  Counts I and II

Count I of the complaint asserts unlawful arrest and unlawful search and seizure claims against "all defendants,"  Complaint, Doc. 1 at ¶118.  The text of Count I, however, omits any reference to Macomb County, and instead focuses the claim against former co-defendant Michigan Auto Theft Authority.  Beyond collective reference to "all defendants," Count II similarly fails to reflect any textual reference to Macomb  County.  Id, Pg. ID 25.  As such, Counts I and II reflect no substantive claim against Macomb County and must therefore be dismissed.  See Ashcroft v Iqbal, 556 US 663 (2009); Bell Atlantic Corp. v Twombley, 550 US 544 (2007).

B.  Count III

Count III, however, asserts the County established and maintained a host of constitutionally unsound policies or practices, as follows:

> a. A de facto policy of deliberate indifference by authorizing or otherwise tolerating its law enforcement officers to engage in a pattern of "filing false police reports, false affidavits, misrepresenting facts to the court, obtaining search warrants based on false or incomplete information, and falsely arresting people, Complaint, Doc. 1 at ¶ 88;

> b. Permitting, encouraging, and ratifying a practice of unjustified, unreasonable, and illegal arrests by its law enforcement officers, and failing to properly supervise, monitor, discipline, transfer, counsel or otherwise control police officers, as well as insurance funded auto theft teams, who were known or who should have been known to violate their established departmental policies, and procedures for arrest management, and where said failures amounted to

> deliberate indifference to the rights of persons with whom the police come into contact, Id. at ¶ 91; and,

10

c. Failing to conduct pre-employment screening, failing to train and discipline, retention of law enforcement personnel known to unlawfully arrest or detain individuals, unlawfully search and seize their property, and unlawfully withhold or suppress evidence in criminal prosecutions, and failing to adequately investigate citizens' complaints lodged against those personnel. Id. at ¶ 92 and its sub-paragraphs a through k.

### 1. Legal Standard

Generally, a local government is a person for the purposes of a §1983 civil rights case. Monell v Department of Social Services, 436 U.S. 685, 689 (1978). Section 1983, however, imposes liability only on one who "subjects [a person], or causes [that person] to be subjected," to a deprivation of federal rights; it "does not allow for liability to imposed vicariously on governmental entities solely on the basis of the existence of an employer-employee relationship with a tortfeasor." Id., at 692. As stated in Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986) "while Congress never questioned its power to impose civil liability on municipalities for their own illegal acts, Congress did doubt its constitutional power to impose such liability in order to oblige municipalities to control the conduct of others" (citing Monell, at 665-683). Accordingly, the Supreme Court has consistently refused to hold municipalities liable under a theory of respondeat superior. See City of Canton v Harris, 489 US 378, 392 (1989).

In Monell and subsequent cases, the Supreme Court has required a § 1983 plaintiff who seeks to impose liability on a municipality to identify a municipal "policy" or "custom" that caused the plaintiff's injury. See Monell, supra at 694; Pembaur, supra at 480-481; Canton, supra at 389. Predicating its liability upon the existence of policy or practice ensures that a municipality is held liable only for those constitutional deprivations resulting from the decisions of its duly constituted legislative body or of

those officials whose acts may fairly be said to be those of the municipality. <u>Monell</u>, supra at 694. Similarly, an act performed pursuant to a de facto practice that has not been formally approved by an appropriate decision maker may fairly subject a municipality to liability only where that practice is deliberately indifferent to the rights of others and at the same time so widespread pervasive as to have the force of law. <u>Monell</u>, supra at 690-691, citing <u>Adickes v. S H Kress & Co.</u>, 398 U.S. 144, 167-168 (1970).

Whether a formally adopted policy, or de facto practice, the standard of what constitutes deliberate indifference is very high. It embraces a stringent standard requiring proof that the government entity disregarded a "known or obvious risk." <u>Patterson v City of Cleveland</u>, 173 F.3d 429 (6th Cir. 1999). Further, the test for deliberate indifference is objective. <u>Farmer v Brennan</u>, 511 U.S. 25 (1994). To be held liable under section 1983, a municipality's actions or omissions must be "arbitrary in the constitutional sense" <u>County of Sacramento v. Lewis</u>, 523 US 833 (1998).

Moreover, the causal link between a municipal policy or practice and the alleged violation must be direct. <u>Monell</u>, supra at 694 (Congress did not intend to impose liability on a municipality unless deliberate action attributable to the municipality itself is the "moving force" behind the Plaintiff's federal rights deprivation) A policy which enables, contributes, allows, permits, or which is coincidental, incidental, or proximately related to the complained of injury is insufficient. Where the custom or practice upon which plaintiff relies is not unconstitutional on its face, "considerably more proof than a single incident will be necessary in every case to establish both the requisite fault on the

part of the municipality, and the causal connection between the policy/practice and the constitutional deprivation." <u>Oklahoma City v. Tuttle</u>, supra; <u>Hullett v Smiedendorf</u>, supra. As such, the existence of an unconstitutional de facto practice requires proof of the existence of persistent pattern of constitutional violations similar to those complained of in a given matter, so widespread and pervasive that it fairly represents municipal policy. <u>Adickes v. S H Kress &Co</u>, supra at 167 (1970) (a custom or usage "must have the force of law by virtue of the persistent practices of state officials")

2. Discussion

Macomb County says that plaintiffs are "without a body of evidence with which to demonstrate the existence of any constitutionally unsound County policies or de facto practices causally tethered to any harms or wrongs of which they complain, even assuming, arguendo, they suffered any harm at all." The Court agrees.

Here, to establish a question of fact on plaintiffs' claim against Macomb County, they must come forth with evident that Macomb County:

- was aware of and tolerated its law enforcement officers committing Brady violations by "filing false police reports, false affidavits, misrepresenting facts to the court, obtaining search warrants based on false or incomplete information, and falsely arresting people;"

- was aware of and tolerated its law enforcement officers effecting "unjustified, unreasonable, and illegal arrests;"

- failed to properly supervise, monitor, discipline, transfer, counsel or otherwise control police officers;

- failed to conduct pre-employment screening, failed to train, discipline, and retained law enforcement personnel known to unlawfully arrest or detain individuals, unlawfully search and seize their property, and unlawfully withhold or suppress evidence in criminal prosecutions; and,

- failed to adequately investigate citizens' complaints lodged against those

13

personnel.

To satisfy their burden, plaintiffs offer five exhibits attached to their response, Plaintiffs' Exhibits A - E,[5] which they say establishes that the County maintained the unlawful policies detailed above. The exhibits fall far short of the mark offering concrete evidence demonstrating that an unconstitutional County policy was the moving force behind any harm they allegedly suffered.

Exhibit A, Doc. 60-2, is a Farmers Insurance Investigation Summary and MATS Report is authored by co-defendant Kriss and identifies Kriss as a witness. It references Oerman and Willis as attendees a meeting with Farmers representatives in September of 2013, seven months prior to the procurement and execution of the warrants at issue herein. This document fails to show how Macomb County violated plaintiffs' constitutional rights.

Exhibit B, Doc. 60-3, is identified as Willis' Chapter 45 request to Farmers seeking information for arrest warrant. However, it is actually co-defendant Kriss's narrative report documenting the September 12, 2013 meeting with Farmers Insurance representatives at which Willis and Oerman appeared. It demonstrates no culpable conduct attributable Macomb County.

Exhibit C, Doc. 60-4, are the April 21 and 23, 2014, search warrants and requests and affidavits at issue. All identify Kriss only as the author or affiant. The search warrants and affidavits on their face fail to establish any liability on the part of Macomb County.

---

[5]Plaintiffs rely on the same five exhibits, Exhibits A-E, in response to Oerman and Willis' motion as well as three additional exhibits, Exhibits F-H.

Exhibit D, Doc. 60-5, a tabulation of seized property executed solely by Kriss. This exhibit fails to reference Macomb County or otherwise implicate it.

Exhibit E, Doc. 60-6, is the March 9, 2015, Circuit Court Order denying costs or fees arising from seizure of automobiles and Order Quashing Bind Over. It does not demonstrate how Macomb County is liable.

In sum, plaintiffs' exhibits fail to touch upon or even intimate the existence of any unconstitutional County policy or practice which causing the constitutional harms they allege.

Finally, to the extent that plaintiffs contend that Macomb County is vicariously liable for the conduct of its law enforcement officers, it is well established that respondeat superior is not available as a theory of recovery under Section 1983. Doe v Claiborne County, Tennessee, 103 F3d 495 (6th Cir 1996). The Supreme Court has consistently refused to hold municipalities liable under a theory of respondeat superior. Monell .v New York City Dept. of Social Services, 436 U.S. 658 (1978) ("'a municipality cannot be held liable solely because it employs a tortfeasor - or, in other words, a municipality cannot be held liable under §1983 on a respondeat superior theory'").

### 3. Conclusion

To survive summary judgment, plaintiffs had to demonstrate that Macomb County maintained constitutionally unlawful policies or practices which (1) authorized or otherwise tolerated filing false police reports, false affidavits, misrepresenting facts to the court, obtaining search warrants based on false or incomplete information, and falsely arresting people, (2) permitted, encouraged, or ratified unjustified, unreasonable and illegal searches and arrests, (3) embraced a failure to properly screen, train,

supervise, monitor, discipline, transfer, counsel or otherwise control police officers who were known or who should have been known to violate their established departmental policies and procedures for arrest management, or (4) countenanced withholding or suppression of evidence in criminal prosecutions, and (5) sanctioned inadequate investigations of citizens' complaints, as alleged in the complaint. As noted above, plaintiffs have not put forth any admissible evidence with which to show the existence of any such policies or practices. As such, Macomb County is entitled to summary judgment.

## VI. Oerman and Willis' Motion for Summary Judgment

### A. Initial Comment

At the outset, it is important to note the limited role that Macomb County Deputy Sheriffs Oerman and Willis played with regard to the investigation, search warrants, and prosecution of Waad's criminal case. Oerman had no involvement with MATS after leaving the unit three months before Keller submitted his January 2014 investigation report and six months before Kriss' pursuit of the April 2014 arrest and search warrants at issue here.

Although Willis attended the September 2013 meeting with Oerman and remained with the MATS Unit and interviewed several witnesses after Keller submitted his report to MATS in January of 2014, he was not involved in procuring the subject warrants – he did not author the warrant requests, he did not author the supporting affidavits, he did not swear to the truth of those affidavits, he did not present the requests to the issuing magistrate, and he did not communicate with the magistrate. Willis' role in this matter was, instead, limited to participating as one member of a large

16

team of officers executing one warrant procured by Kriss.

## B. Legal Standards/Discussion

A plaintiff proceeding under § 1983 must establish that a person acting under color of state law deprived him of a right secured by the Constitution or by federal law. 42 U.S.C. § 1983; <u>Parratt v Taylor</u>, 451 US 527 (1981); <u>Gomez v Toledo</u>, 446 U.S. 635 (1980); Hoover v Walsh, 682 F3d 481, 492 (6th Cir. 2012). At the summary judgment stage, the non-moving party bears the burden of demonstrating "a genuine issue of material fact as to the following two elements: 1) the deprivation of a right secured by the Constitution or laws of the United States and 2) that the deprivation was caused by a person acting under color of state law. <u>Miller v. Calhoun County</u>, 408 F3d 803, 812 (6th Cir 2005) (quotations and citations omitted).

Oerman and Willis argue that plaintiffs cannot survive summary judgment on any of their claims. Each claim is addressed in turn below.

### 1. Unlawful Search and Seizure

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." It further provides that "no Warrants shall issue, but upon probable cause." "'Searches conducted outside the judicial process, without prior approval by [a] judge or [a] magistrate [judge], are per se unreasonable. . . subject only to a few specifically established and well-delineated exceptions.'" <u>Arizona v Gant</u>, 556 US 332 (2009) (quoting <u>Katz v United States</u>, 389 U.S. 347, 357 (1967).

Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the

clearest indication that the officers acted in an objectively reasonable manner. United States v. Leon, 468 U.S. 897, 922-923 (1984); Stone v Powell, 428 US 465, 498 (Burger, C. J., concurring) ("[once] the warrant issues, there is literally nothing more that the policeman can do in seeking to comply with the law,"); United States v. Ross, 456 U.S. 798, 823, n 32 (1982) (a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search).  Law enforcement officers may rely on facially valid arrest warrants even in the face of vehement claims of innocence by reason of mistaken identity or otherwise. Masters v. Crouch, 872 F2d 1248, 1253 (6th Cir 1989) (citing Baker v McCollan, 443 U.S. 137, 145 (1979) ("we do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent.").

To overcome this complete defense, a plaintiff must prove by a preponderance of the evidence that defending officer "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that created a falsehood and such statements or omissions were material, or necessary, to the finding of probable cause."  Sykes v. Anderson, 625 F.3d 294, 305 (6th Cir. 2010).

A plaintiff may also avoid the warrant shield by showing "it is obvious that no reasonably competent officer would have concluded that a warrant should issue." Malley v. Briggs, 475 U.S. 335 (1985). The "shield of immunity" otherwise conferred by the warrant, Id, 345, will be lost where the warrant was "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," United States v Leon, 468 U.S. 897, 923 (1984) (internal quotation

marks omitted). The threshold for application of "this exception is a high one, and it should be." <u>Messerschmidt v Millender</u>, 565 U.S. 535, 547 (2012)

Nonetheless, where the defending officer played no role in procuring a challenged warrant, an arrest made pursuant to a facially valid warrant will not give rise to an unlawful arrest, detention, or prosecution claim against that officer. <u>Butcher v City of Alma</u>, 2017 US Dist LEXIS 74116, *10 (because the bench warrant issued for Plaintiff's arrest was facially valid, and because Defendant Walters played no role in procuring the warrant, Plaintiff's false arrest claim is without merit, and because Defendant's restraint of Plaintiff was not unlawful, Plaintiff's false imprisonment claim was without merit), citing <u>Peterson Novelties v. City of Berkley</u>, 259 Mich. App. 1 (2003).

Here, the undisputed evidence shows that neither Oerman nor Willis procured the challenged search warrants. As such, plaintiffs cannot establish a genuine issue of material fact as to either Oerman or Willis on their unlawful search and seizure claim.

## 2. Unlawful Arrest

A false arrest is an illegal or unjustified arrest, and the guilt or innocence of the person arrested is irrelevant. <u>Peterson Novelties, Inc. v. City of Berkley</u>, supra, citing <u>Lewis v Farmer Jack, Inc</u>., 415 Mich. 212, 218 (1982). To prevail on a claim of false arrest or false imprisonment, a plaintiff must show that the arrest was not legal, i.e., the arrest was not based on probable cause. <u>Lewis</u>, supra at 218; <u>Burns v. Olde Discount Corp.</u>, 212 Mich. App. 576, 581 (1995); <u>Tope v Howe</u>, 179 Mich App 91, 105 (1989). An unlawful arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff. <u>Voyticky v. Village of Timberlake, Ohio</u>, 412 F.3d 669, 677 (6th Cir. 2005).

Again, neither Oerman nor Willis procured the challenged warrant authorizing Waad's arrest. Therefore, plaintiffs cannot establish a genuine issue of material fact as to their liability for plaintiff's allegedly unlawful arrest.

### 3. Malicious Prosecution

The elements of a malicious prosecution claim in a § 1983 action are (1) "'that a criminal prosecution was initiated against the plaintiff and that the defendant 'ma[d]e, influence[d], or participate[d] in the decision to prosecute'"; (2) "that there was a lack of probable cause for the criminal prosecution"; (3) "that, 'as a consequence of a legal proceeding,' the plaintiff suffered a 'deprivation of liberty'… apart from the initial seizure"; and (4) that "the criminal proceeding was resolved in the plaintiff's favor.'" Mills v Barnard, 869 F3d 473 (6th Cir. 2017), citing In Sykes v. Anderson, 625 F.3d 294, 308-09 (6th Cir 2010) (quotations and brackets in original).

Similar to the legal principal applicable to search and arrest issues, the existence of a facially valid warrant conclusively determines the existence of probable cause. It is well settled that one who makes a full and fair disclosure to the prosecutor is not subject to an action for malicious prosecution. Payton v City of Detroit, 211 Mich. App. 375, 395 (1995). Accordingly, "'the only situation in which an action for malicious prosecution would properly lie is where a police officer knowingly swears to false facts in a complaint, without which there is no probable cause.'" Id., quoting King v. Arabic, 159 Mich. App. 452, 466 (1987). Accordingly, where a warrant issuing magistrate's determination of probable cause is the product of an intentional, knowing, or reckless falsehood, the warrant shield is inapplicable.

As noted above, neither Willis nor Oerman procured the subject warrants in this

matter.  Moreover, neither were the originators of any report of suspected misconduct related to Waad, neither instigated the investigation of his businesses or business practices, and neither acted as the complaining witness as to any criminal allegation or charge made against him.

4.  Qualified Immunity

Oerman and Willis also argue that even if they were implicated in any way, their actions are shielded by qualified immunity.  The Court agrees.  The defense of qualified immunity is available to any governmental official accused of violating an individual's clearly established constitutional rights.  <u>Davis v. Sherer</u>, 468 US 183 (1984), reh denied 468 US 1226 (1984).  Qualified immunity entails a two-step inquiry; first, whether the defending party violated a constitutional right, and second, whether that right was clearly established.  <u>Hensley v. Gassman</u>, 693 F.3d 681 (6th Cir. 2012); <u>Aldini v Johnson</u>, 609 F3d 858, 863 (6th Cir. 2010).  Qualified immunity attaches when an official's conduct "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  <u>White v Pauly</u>, 137 S. Ct. 584 (2017), citing and quoting <u>Mullenix v Luna</u>, 136 S. Ct. 305, 308 (2015).  A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." <u>Reichle v. Howards</u>, 566 U.S. 658, 664 (2012) (internal quotation marks and alteration omitted). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." <u>Ashcroft v al-Kidd</u>, 563 U.S. 731, 741 (2011). Put simply, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  <u>Malley v Briggs</u>, 475 U.S. 335, 341 (1986).

Here, to the extent plaintiffs' claims concern the procurement of the warrants employed to effect his arrest and search his home and businesses, plaintiffs are unable to demonstrate that Oerman or Willis violated any constitutional right inuring to him. This is so because neither of them were involved in any of the operant events concerning the issuance of those warrants. Even asserting that they violated Waad's 4th Amendment right to due process by not conducting a pre-warrant investigation wholly independent of Farmers Investigator Keller's investigation places Waad in no better position because prevailing law does not impose a duty upon law enforcement officers to conduct an investigation beyond that which establishes probable cause.

As to the warrant execution, Oerman did not participate in the execution of any warrant procured by Kriss. Willis, however, did participate in the execution of a single search warrant at one location. Where an officer executes, but does not procure, a search warrant, the qualified immunity inquiry requires determination of whether a "'reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization.'" Bills v Aseltine I, 958 F2d, 697, 705 (6th Cir 1992), quoting United States v. Leon, 468 U.S. 897, 922 n 23 (1984) (where the officer does not procure the warrant, the test can be recast as "based on all of the circumstances, whether a reasonably well-trained officer would know that the search would violate the complainants rights). Here, plaintiff has not shown any facts which would have placed Willis on notice that the execution of the search in which he participated would constitute a violation of Waad's 4th Amendment right to be free from unreasonable searches and seizures.

C.  Plaintiffs' Evidence

22

In response to Oerman and Willis' motion, plaintiffs attached eight (8) exhibits, Exhibits A - H. None of these exhibits support plaintiffs' claims or show that there is a genuine issue of material fact over their claims. Exhibits A - E were discussed above relative to Macomb County. They are briefly discussed again relative to Oerman and Willis.

Exhibit A, Doc 60-2, is the Farmers Insurance Investigation Summary and MATS Report is authored by Kriss. It references Oerman and Willis as attendees a meeting with Farmers representatives in September of 2013, seven months prior to the procurement and execution of the warrants at issue here. This exhibit however fails to demonstrate that either Oerman or Willis participated in the warrant procurement process, that they were otherwise aware of the contents of any affidavit employed to obtain such warrants, that they were privy to any communication between Kriss and the issuing magistrate, or that Willis was on notice that the warrant authorizing the single search in which he was involved was anything less than facially valid. As such, it does not establish their liability.

Exhibit B, Doc. 60-3, is identified as Willis' Chapter 45 request to Farmers seeking information for arrest warrant. As noted above, it is actually Kriss's narrative report documenting the September 12, 2013 meeting with Farmers Insurance representatives at which Willis and Oerman appeared. It does not demonstrate any culpable conduct attributable to Oerman or Willis.

Exhibit C, Doc. 60-4, are the April 21 and 23, 2014, search warrants and affidavits. All identify Kriss only as author or affiant. None establish any involvement by Oerman or Willis in the procurement process.

Exhibit D, Doc. 60-5, is a tabulation of seized property executed solely by Kriss. It does not reference or note Oerman or Willis' involvement in the seizure or tabulation of any property subject to the warrants at issue here. The exhibit also does not establish the location of the single search in which Willis participated or what, if anything, he personally seized.

Exhibit E, Doc. 60-6, is the March 9, 2015 Circuit Court Order denying costs or fees arising from seizure of automobiles and Order Quashing Bind Over which bound Waad over for trial. This order fails to establish or otherwise demonstrate that either Oerman or Willis played any role in Waad's preliminary exam which resulted in the bind over.

Exhibit F, Doc. 60-7, is the Michigan Court of Appeals opinion which upheld the 16th Circuit Court's quashing of Waad's bind over. It too fails to implicate Oerman or Willis in any culpable conduct tethered to Waad's preliminary examination.

Exhibit G, Doc. 60-8, is the state district court order binding Waad over for trial. It references only Kriss as offering testimony at Waad's preliminary examination; it makes no reference to Willis or Oerman as participating in that proceeding in any manner.

Finally, Exhibit H, Doc. 60-9, reflects a series of text messages between Willis and Keller. They date from October through December of 2015, a time more than eighteen months after the subject warrants were procured and executed. Accordingly, because they originate after-the-fact, neither the text messages nor the exchange reflected therein can be causally related to the procurement process or execution of the warrants. More importantly, the messages fail to demonstrate any culpable conduct attributable to Willis.

24

### D. Collective Liability

Oerman and Wills also contend that plaintiffs improperly cloak the failure of evidence implicating them in any unlawful act with conclusory statements implicating them in the collective sense. The Court agrees. Plaintiffs' exhibits do not demonstrate constitutionally offensive conduct personally and individually attributable to them. Instead, plaintiffs appear to proceed from the position that all defendants are liable based on the collective acts or omissions of all other defendants. It is well established, however, that liability in a § 1983 action cannot be based on a theory of respondeat superior. A plaintiff must instead plead that each Government-official defendant, through the official's own conduct, has violated the Constitution, and "(e)ach defendant's liability must be assessed individually based on his own actions." Pollard v City of Columbus, 780 F3d 395, 402 (6th Cir 2015), quoting Binay v. Bettendorf, 601 F3d 640, 650 (6th Cir 2010). Accordingly, neither Oerman nor Willis can be held liable for the acts or omissions of any other defending party, even assuming arguendo any other defending party's acts or omissions constituted a rights violation of any kind.

### E. Conclusion

Plaintiffs have failed to offer proofs that Oerman was involved in the subject events beyond his attendance at the Farmers meeting eight months prior to the procurement and executions of the challenged warrants. Similarly, plaintiffs have not furnished any evidence that Willis was involved in the warrants' procurement, or that his participation at the scene of one warrant's execution was unlawful. Based on the undisputed facts and authorities cited, they are entitled to summary judgment on all of plaintiffs' claims.

## VII.  Kriss' Official Capacity Claim/Sanctions Motion

Kriss first argues that the assertion of §1983 liability against him in his "official" capacity fails.  The Court agrees.  It is well settled that an official capacity claim pled against an individual is treated like a <u>Monell</u> claim against the governmental entity employing the individual.  <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658 (1978); <u>Matthews v. Jones</u>, 35 F.3d 1046, 1049 (6th Cir. 1994).  <u>Monell</u> allows for municipal liability under §1983 only where an "official municipal policy of some nature caused a constitutional tort."  <u>Id</u>.

Here, the record shows that Kriss was an employee of the City of Warren at all relevant times.  Plaintiffs did not plead the existence of a policy or custom of the <u>City of Warren</u> that resulted in the deprivation of their constitutional rights.  See Doc. 1.  At the close of discovery, plaintiffs still failed to identify a policy or custom of the City of Warren that resulted in the deprivation of their constitutional rights.  This prompted Kriss to file a Rule 11 Motion.  See Doc. 68.  In response to the Rule 11 Motion, plaintiffs fought to maintain their "official capacity" claim by asserting the factual basis of the claim is inadequate training by Michigan Auto Theft Authority (MATA) regarding whether a conflict of interest exists when an insurance company provides information to a vehicle theft task force like MATA for investigation.

As an initial matter, plaintiffs did not seek leave to amend the complaint to plead this claim against the City of Warren.  This weighs in favor of dismissal.  See <u>Scheid v. Fanny Farmer Candy Shops, Inc.</u>, 859 F.2d 434, 436 (6th Cir. 1988) ("In practice, a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.").  Moreover, plaintiffs'

26

failure to seek leave to amend does not appear to be an oversight.  Plaintiffs previously advanced this theory against the MATA in the complaint, see Doc. 1 at ¶ 66-71.  MATS filed a motion to dismiss.  See Doc. 16.  After the motion to dismiss was filed, plaintiffs agreed to dismiss MATA.  See Doc. 32.

Finally, considering the merits of the claim, it fails as a matter of law.  An allegation about what MATA should be doing regarding training does not translate into a basis for liability against a different governmental entity like the City of Warren.  See City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989) (Only where a failure to train reflects a "deliberate" or "conscious" choice by a municipality - a "policy" as defined by our prior cases - can a city be liable for such a failure under §1983.).  The City of Warren has made no deliberate choice about the way the MATA conducts training.  In fact, the City of Warren has no connection to and certainly no control over the method or means used by the MATA.  Plaintiffs "official" capacity claim fails against Kriss.  Summary judgment is appropriate.

As noted above, Kriss filed a renewed motion for Rule 11 sanctions based on plaintiffs continued pursuit of this claim.  (Doc. 75).  While the Court understands Kriss' frustration with defending against a meritless official capacity claim, it declines to sanction plaintiffs.  In light of the history of this case, dismissal of the claim is sufficient.

VIII.  Kriss' Motion for Summary Judgment

A.  Collateral Estoppel

Kriss first contends that plaintiffs' §1983 claims against in his individual capacity are barred by the state court's probable cause determination.  The existence of probable cause is a complete defense to a claim for false imprisonment/false arrest, unlawful seizure and malicious prosecution.  See Criss v. City of Kent, 867 F.2d 259, 262 (6th Cir. 1988) ("[T]he Fourth Amendment requires the states to provide a fair and reliable determination of probable cause as a condition for any significant potential restraint of liberty. Thus, an arrest without a warrant does not violate the Fourth Amendment if probable cause exists for the arresting officer's belief that a suspect has violated or is violating the law.") (internal citation and quotation marks omitted); Burns v. Olde Discount Corp., 212 Mich. App. 576 (1995) ("A claim of false arrest requires proof that the arrest lacked probable cause. Similarly, a malicious prosecution claim requires proof that there was no probable cause for the proceeding.").

Here, the determination of probable cause was made by Judge Ausilio after a probable cause hearing by Opinion and Order dated 12/5/2014.  See Doc. 26-3.  The Sixth Circuit recognizes that "where a state affords an opportunity for an accused to contest probable cause at a preliminary hearing and the accused does so, a finding of probable cause by the examining magistrate or state judge should foreclose re-litigation of that finding in a subsequent § 1983 action."  Coogan v. City of Wixom, 820 F.2d 170, 174-75 (6th Cir.1987), overruled on other grounds by Frantz v. Vill. of Bradford, 245 F.3d 869, 874 (6th Cir. 2001).  Additionally, collateral estoppel precludes a plaintiff in a civil case from re-litigating claims that were previously addressed in criminal proceedings.  Buttino v. City of Hamtramck, 87 F. App'x 499, 503 (6th Cir. 2004). In this regard, there is an exception to the requirement that the two matters involve the same

parties or their privies "when the first suit is a criminal matter and the second suit is a civil matter." Buttino, 87 F. App'x at 505, n. 4 (citation omitted).  As such, it could be said that plaintiffs' claims are barred.  However, because plaintiffs have alleged that Kriss provided false information in the warrant, this argument will not carry the day.

B.  Legal Standards/Discussion

Kriss says that plaintiffs have not put forth evidence sufficient to survive summary judgment on any of the claims against him and that he is protected by qualified immunity.  The legal standards for the claims against Kriss and qualified immunity are set forth above in the discussion relating to Oerman and Willis and will not be repeated. See Part VI. B.  Rather, the law is supplemented as necessary for an analysis of the claims against Kriss.

1.  Unlawful Search and Seizure/Unlawful Arrest

It is a complete defense to an action for false arrest or imprisonment that the defendant police officer acted in good faith on information that, if true, would have warranted his or her conduct in making the arrest or causing the detention. Brewer v. Perrin, 132 Mich. App. 520 (1984).  To sustain the defense, it must appear that the circumstances or information were such that a person of ordinary care would have acted on.  Id.  Barring any proof that the police officer made false statements to secure a warrant, it is also a complete defense to an action for false arrest or imprisonment where the arrest is made pursuant to a facially valid warrant or complaint.  Voyticky, 412 F.3d at 677.  Importantly, the "validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest."  Michigan v.

29

<u>DeFillippo</u>, 443 U.S. 31, 36 (1979); <u>Noy v. Travis</u>, 339 F. App'x 515, 518 (6th Cir. 2009).

Here, it is undisputed that during the searches of plaintiffs' properties, on April 23, 2014, Waad was not detained or "imprisoned" by Kriss. To the contrary, Waad has admitted in deposition that he was "vacationing with his wife" on this date

Further, on April 28, 2014, Macherzak and Judge Dean Ausilio authorized a complaint that provided for the lawful arrest of Waad on five (5) counts of False Pretenses $1,000 to $20,000 and two (2) counts of False Pretenses $200 to $1,000. On April 29, 2014, after Waad returned to Michigan, he "voluntarily surrendered to authorities" pursuant to that duly authorized warrant for his arrest. Kriss and others from MATS transported Waad for arraignment and he was released the same day. There was no other detainment of Waad by Kriss.

Importantly, it is undisputed that Kriss believed at the time Waad turned himself in that there was probable cause to arrest him on false pretense charges given the SIU Report and photographic evidence, his personal observations of customer vehicles and the victim statements he obtained as set forth in his Incident Report. Kriss was entitled to rely on this facially valid authorization, and did so according to his Incident Report, when he affected Waad's arrest.

Finally, the suggestion in the complaint that Kriss held Waad longer than necessary after he was granted a personal bond is defeated by Waad's own testimony. Doc. 1, ¶41. Waad admitted at deposition that Judge Ausilio's order on bond included the condition that Waad surrender his passport to authorities before release. Waad dep., p. 129-30. Waad also admitted that his wife had trouble finding his passport that day which meant he sat in custody longer than expected that day. Kriss is only liable

under §1983 for his own personal actions; not any delay occasioned by a judge's order or Waad's wife.  Thus, Kriss is entitled to summary judgment on Waad's unlawful arrest claim.

As to the claim for unlawful search, "police officers are entitled to rely on a judicially secured warrant for immunity from a §1983 action for illegal search and seizure unless the warrant is so lacking in indicia of probable cause, that official belief in the existence of probable cause is unreasonable." <u>Yancey v. Carroll Cty</u>., 876 F.2d 1238, 1243 (6th Cir. 1989). This rule exists because "the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or ... in 'objective good faith.'" <u>Messerschmidt v. Millender</u>, 565 U.S. 535, 546 (2012).

Here, plaintiffs allege that despite the search warrants,  Kriss can somehow be held liable under §1983 for unlawful search or seizure of any rental aspect of the Marks One operations.  Specifically, plaintiffs suggest that the failure to identify the separately legal entity by name that operated at 2375 8 Mile Road to rent vehicles to customers of the collision shop operating from the shared-lot address at 2325 8 Mile Road is a basis for action.  This assertion fails where the Search Warrant was executed for <u>both</u> of these addresses (Marks One Collision and Marks One Car Rental ) on the basis that they were operating as a single-entity with the rentals being used for the collision operations.  The assertion further fails where each search warrant expressly provided for search and seizure of all assets of Marks One–a single operation as Kriss understood it.  Each search warrant asked to search the following:

¶1: All books of accounts and accounting papers in the name of the defendant or

defendant business…

¶2: Any and all rental or personal vehicles that may have been used by customers while repairs were being performed or in the course of Marks One business.
¶3: All monies, negotiable instruments, or securities.

¶4: Any computers or electronic media that were or may have been used as a means to commit the offenses described on the warrant.

Waad cannot avoid the validity of the search warrants merely because he organized a distinct legal entity – Marks One Car Rental – to run rental income through separate from the collision shop. To the contrary, the fact that a neutral magistrate authorized the search warrants to include the search and seizure of rental vehicles and other instrumentalities or tools of the fraudulent scheme is dispositive under Messerschmidt. Summary judgment on plaintiffs' claim of unlawful search and seizure claim under §1983 is warranted.

### 2. Malicious Prosecution

As to a claim for malicious prosecution, an officer who merely turns over evidence in or writes a report regarding a prosecution that is later dismissed in the plaintiff's favor cannot does not "participate" in the decision to prosecute. Skousen v. Brighton High School, 305 F.3d 520 (6th Cir. 2002); McKinley v. City of Mansfield, 404 F.3d 418, 444 (6th Cir. 2005). This means that in order to establish that a testifying officer was responsible for commencing a criminal proceeding for purposes of a malicious-prosecution claim, a plaintiff is required to present evidence that the officer "(1) stated a deliberate falsehood or showed reckless disregard for the truth [at the hearing] and (2) that the allegedly false or omitted information was material to the [court's] finding of probable cause." Id. To this end, it is "firmly established that where

there is probable cause to prosecute, a §1983 action for malicious prosecution will not lie." McKinley, 404 F.3d at 445.

Here, there is not any allegation of a false statement by Kriss. The claim instead is that MATS officers failed to sufficiently corroborate the investigative findings from Farmers before they investigated Marks One. First, this assertion is belied by the record which indicates that MATS did its own investigation after receiving the SIU report. The Affidavits for search warrants state:

> 2. On 9/12/2013 Affiant was contacted by Allen Keller of Farmers Insurance who stated that he believed Farmers Insurance has been the victim of ongoing fraudulent insurance claims at the hands of Marks One Collision. He stated that the owner Maher Waad has made it extremely difficult to appraise vehicles taken there for repair by Farmer's customers. They suspect that Marks One is inflating the claims and overcharging for repairs.

> 3. Farmer's stated that they were going to re inspect several vehicles that had been repaired at Marks One to attempt to determine if the repairs had been completed as billed.

> 4. On 2/7/13 affiant spoke with Farmer's employees Alan Keller and Scott Wood. Wood is an auto physical damage expert. They stated that they had inspected nine vehicles which had been repaired at Marks One Collision between the dates of 3/14/12 and 7/14/2013 involving a total of ten insurance claims. Their investigation revealed that all nine vehicles had discrepancies including parts billed as replaced but only repaired, aftermarket parts installed where OEM parts were billed and labor billed but not performed. The total amount of documented discrepancies amounts to $19,908 or 36% of the total amount billed.

> 5. Affiant interviewed seven of the nine owners of the vehicles which had been repaired. None of them consented to the discrepancies in the repairs as opposed to the bills. Affiant was unable to make contact with two of the owners.

The record shows that Kriss, the rest of the MATS officers and Goldberg believed that probable cause existed to search and seize rental vehicles in particular given their own findings that "free" rentals were being used to entice customers to bring their insured vehicles to Marks One for repairs and/or look the other way when repairs were

33

not done correctly --- meaning the rentals were mere instrumentalities or tools of the fraudulent scheme. The record also shows that Waad was indeed operating in this way; he testified to the "free rentals" and "waived deductibles" he offered customers who would agree to "deviations" after both Marks One and the customer had signed-off on the repair specifications and accepted payment from the insurance company. Thus, Kriss is entitled to summary judgment on plaintiffs' malicious prosecution claim.

### C. Plaintiffs' Arguments

Plaintiffs' primary argument to avoid summary judgment is that the business name of "Marks One Car Rental" did not appear in the factual recitation of the Kriss' affidavits for search warrant. Plaintiffs suggest this renders the search warrants unconstitutional "pre se." Not so. "[T]echnical inaccuracies in a warrant do not automatically render unconstitutional searches conducted pursuant to such a warrant." Knott v. Sullivan, 418 F.3d 561, 569 (6th Cir. 2005). "The test for determining whether a search warrant describes the premises to be searched with sufficient particularity is not whether the description is technically accurate in every detail, but rather whether the description is sufficient to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premises might be mistakenly searched." United States v. Durk, 149 F.3d 464, 465 (6th Cir. 1998).

Here, plaintiffs cannot meet this standard. Kriss testified that he knew exactly what addresses were being searched, prepared an affidavit and warrant specifically for each address to be searched and included a physical description of personal property and records to be seized from these addresses. This is not a case where a police

officer prepared a warrant based on erroneous information. Rather, this is a situation where the officer used the moniker "Marks One" to describe an alleged criminal enterprise operating from multiple locations and specifically including the use of "rental cars." The fact that there might, in hindsight, have been a better way to describe the different businesses operated by Waad does not render the search warrant constitutionally deficient.

Further, plaintiffs assertion that the Farmers' SIU report was "blatantly false" does not advance their case against Kriss. An officer is entitled to rely on a report like this one and is not obligated to search for exculpatory information once he reasonably believes probable cause existed. United States v. Howard, 632 F. App'x 795, 804 (6th Cir. 2015); Logsdon v. Hains, 492 F.3d 334, 341 (6th Cir. 2007). Plaintiffs have not provided any evidence to create a genuine issue of material facts as to whether Kriss knowingly or recklessly presented false information to the prosecutor or the court.

Overall, Kriss is entitled to summary judgment on all claims against him.

## IX. Conclusion

For the reasons stated above,

Macomb County's Motion for Summary Judgment is GRANTED

Oerman and Willis' Motion for Summary Judgment is GRANTED.

Kriss' Motion for Summary Judgment is GRANTED.

Kriss' Renewed Motion for Sanctions is DENIED.


This case is DISMISSED.

SO ORDERED.

CODA

Plaintiffs have been litigating against perceived wrongs for over five years, in one form or another.  This is the last of these cases.  On reflection, the Court is constrained to note that but for the cleverness of counsel, this litigation would have ended much sooner.  At the end of the day, Waad may still believe he was mistreated by insurance companies, police, prosecutors, and the courts.  However, none of the actions taken by any of the defendants, individually or collectively, amounts to a viable or triable claim.


S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: 12/11/2018
       Detroit, Michigan